IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HARRIET L. DAVIES,

                    Plaintiff,

                  v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security
Administration,

                    Defendant.

_____

Civil No. 05-3079-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Harriet L. Davies ("Davies"), brings this action pursuant to 42 USC § 405(g),

seeking judicial review of a final decision of the Commissioner of Social Security

Administration denying her application for disabled widow's insurance benefits under Title II of

the Social Security Act, 42 USC §§ 401-34.  The Commissioner has filed a Motion to Remand

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security Administration.  He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - FINDINGS AND RECOMMENDATION

for further administrative proceedings (docket #16).  For the reasons that follow, that motion should be denied, and the Commissioner's decision should be reversed and remanded for the immediate payment of benefits.

## BACKGROUND

Davies was born in 1944.[2]  Tr. 100.[3]   At the time of the ALJ's decision, she was 60 years old and had a high school education.  Tr. 17.  Her husband, Ronald Davies, died in December 1991.  Tr. 100.

Davies protectively filed an application for disabled widow's benefits on October 15, 2001 (Complaint, ¶ 5; Tr. 99-102), alleging disability beginning on March 1, 1998, due to a combination of impairments including agoraphobia, anxiety, depression, obsessive compulsive disorder, chronic obstructive pulmonary disease, coronary artery disease, and fibromyalgia. Tr. 17, 101, 114, 121.  Her application was denied initially and on reconsideration.  Tr. 43-47, 50-52.  Davies requested a hearing, which was held before Administrative Law Judge ("ALJ") John J. Madden, Jr. on August 3, 2004.  Tr. 53-54, 540-87.  On October 19, 2004, the ALJ issued a decision finding Davies not disabled within the meaning of the Social Security Act because she had performed substantial gainful activity as a wallpaper hanger prior to the ending date of the relevant time period ending November 30, 1998.  Tr. 16-22.  That decision became the final order of the Commissioner on July 11, 2005, when the Appeals Council denied Davies' request for review.  Tr. 6-8.  Davies now seeks judicial review of the Commissioner's decision.

## DISABLED WIDOW'S INSURANCE BENEFITS

[2]  In accordance with Local Rule 10.3(a)(3), only the relevant year is given.

[3]  Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer (docket #4).

2 - FINDINGS AND RECOMMENDATION

**I.  Prescribed Period**

A disabled widow between the ages of 50 and 60 must establish disability during a prescribed period which begins with "the month in which occurred the death of the fully insured individual" and lasts until "the close of the eighty-fourth month following the month within which such period began."  42 USC § 402(e)(4).  The record reveals that Davies' husband died in December 1991.  Thus, the prescribed period applicable to Davies' claim began in January 1992 (the month following December 1991 when her husband died) and ends on December 31, 1998, which is the "close of the eighty-fourth month" thereafter.  Although the ALJ found that the prescribed period ended November 30, 1998 (Tr. 21-22), the Commissioner now concedes that the end of the prescribed period is December 31, 1998.

**II.  Disability Analysis**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months[.]"  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996) (citations omitted). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR § 404.1520.  Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, then the Commissioner proceeds to step two.  20 CFR § 404.1520(b).

At step two, the Commissioner determines whether the claimant has one or more severe impairments.  If not, the claimant is not disabled.  If the claimant has a severe impairment, then the Commissioner proceeds to step three.  20 CFR § 404.1520(c).

At step three, the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If so, the claimant is disabled.  If the impairment does not meet or equal one of the listed impairments, then the Commissioner proceeds to step four. 20 CFR § 404.1520(d).

If the adjudication proceeds beyond step three, the Commissioner must determine the claimant's residual functional capacity ("RFC").  The RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by the impairments.  20 CFR §§ 404.1545(a), 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the Commissioner determines whether the claimant is able to perform work he or she has done in the past.  If so, the claimant is not disabled.  If the claimant demonstrates that he or she cannot perform work done in the past, the Commissioner proceeds to step five. 20 CFR § 404.1520(e).

Finally, at step five, the Commissioner determines whether the claimant is able to do any other work.  If not, the claimant is disabled.  If the Commissioner finds the claimant is able to do

other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 CFR § 404.1520(f), 404.1566.

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  However, at step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id.*

## THE ALJ'S FINDINGS

The ALJ determined that Davies meets all of the nondisability requirements for Disabled Widow's Insurance Benefits set forth in Section 202(e) of the Social Security Act, with the exceptions noted in 20 CFR § 404.335(e).  Tr. 21.

At step one, the ALJ found that, during the proscribed period, ending November 30, 1998, Davies performed substantial gainful activity within the meaning of 20 CFR § 404.1575. Tr. 21-22.  As a result,  the ALJ found Davies not disabled and did not proceed to steps two through five of the disability analysis.

Davies contends that the record supports an immediate award of benefits.  The Commissioner seeks a remand for reevaluation of whether Davies' post-March 1998 work as a wallpaper hanger constituted substantial gainful activity and, if it was not, an analysis of steps two through five.

5 - FINDINGS AND RECOMMENDATION

**STANDARD OF REVIEW**

District courts have the power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the case. 42 USC § 405(g). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. *Id*.

The Commissioner's decision must be affirmed if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

**DISCUSSION**

Davies requests that the case be remanded to the Commissioner for an immediate payment of benefits because: (1) the step one finding of the ALJ is not supported by substantial evidence and is contrary to the law; and (2) the ALJ deprived Davies of due process by misrepresenting at the hearing that he would find that she had no past relevant work and was limited to sedentary work and reverse the reconsideration opinion based on the sedentary grids;

and (3) no unresolved issues remain and the record reveals that Davies was disabled within the prescribed period based upon application of the grids.

**I.  Substantial Gainful Activity During Prescribed Period – Step One Finding**

An individual is generally presumed to be engaged in substantial gainful activity if monthly earnings averaged $500 per month in 1998 through June 1999.  20 CFR § 404.1574. The ALJ concluded that Davies continued to work as a self-employed wallpaper hanger at least through December 2000 and that her work was clearly worth more than $500 per month during 1998.  Tr.  20-21.

The ALJ's written decision reveals that, proceeding from the mistaken premise that there were inconsistencies between Davies' testimony and her earnings record, the ALJ accused Davies of earning money "under the table" (Tr. 19), engaged in a speculative analysis of Davies' likely earnings (Tr. 19-21), and then concluded that she engaged in substantial gainful activity by working as a self-employed wallpaper hanger from March 1, 1998, through at least the end of November 1998.  Tr. 21-22.  The Commissioner now concedes that the ALJ's speculative calculations regarding Davies' income during that period lack substantial support.  Nevertheless, the Commissioner argues that this case should be remanded for the ALJ to develop additional evidence regarding Davies' post-March 1998 work and earnings to determine whether she worked and how much she earned.  Neither the record nor the Social Security regulations supports such a result.

First, none of the alleged inconsistencies cited by the ALJ withstands scrutiny.  In his decision, the ALJ asserts that statements by Davies in certain documents (Disability Report (Exhibit 2E/3, Tr. 115); Activities of Daily Living Report (Exhibit 7E/7, Tr. 139); and Work

7 - FINDINGS AND RECOMMENDATION

History Report (Exhibit 8E, Tr. 140)) that she worked 5-20 hours per day and that her work

hanging wallpaper with a girlfriend "was profitable enough for me to support myself and

children" are inconsistent with her hearing testimony concerning her earnings after moving to

Oregon in June 1986 (Tr. 551-54).  Tr. 18.  However, this assertion ignores Davies' hearing

testimony clarifying that the documents should state she worked 5-20 hours per week (rather

than per day), her testimony about her work after moving to Oregon in 1986, and her testimony

that after moving to Oregon, she was not the sole supporter of her two children (born in 1963

and 1968).  Tr. 180, 549-50, 554-55.  The ALJ also cites three "social history" entries in doctors'

reports which state that Davies  "hangs wallpaper" (Exhibit 22F/16, Tr. 410, dated December 15,

1999 and Exhibit 27F/23, Tr. 475, dated December 5, 2000) or "has retired from being a

wallpaper hanger" (Exhibit 27F/12, Tr. 464, dated May 20, 2002) to discredit Davies' testimony

concerning her earnings.  However, these "social history" entries at best indicate what job

Davies reported she performed, without indicating to what degree (if any) she did so, and in any

event do not provide any indication of Davies' earnings as a result of that occupation during the

relevant time period.

Davies testified that she would earn about $20 on a job (after expenses) because she and

her friend had a "$50 minimum" per job. Tr. 552-53.  She also testified that on a "good week"

she might earn $110 (after expenses).  *Id.*  Contrary to the ALJ's decision, this testimony is not

inconsistent with the documents Davies completed when applying for benefits which state that

she charged $10 per roll to hang wallpaper (Tr. 141), nor is it inconsistent with Davies'

testimony that she declared everything she made (Tr. 549), but was told by her tax preparer that

she did not earn enough to pay into Social Security (Tr. 552).  In light of the lack of

8 - FINDINGS AND RECOMMENDATION

inconsistencies between the documentary evidence and Davies' testimony, the ALJ's

conclusions that Davies worked 20 hours a day hanging wallpaper and then not reporting her

earnings are wholly unsupported by the record and provide no basis to conclude that Davies was

performing substantial gainful activity during the prescribed period.  The ALJ's subsequent

speculation concerning the likely earnings Davies had during that period are equally

unsupported, as the Commissioner now concedes.

     Furthermore, after the time limit for correcting earnings records passes, Social Security

records are conclusive evidence of the amounts of a claimant's earnings and the periods in which

they were received.  20 CFR § 404.803(c).  There are enumerated exceptions to this regulation.

However, the Commissioner has not argued that any such exception applies or offered any other

reason why Davies' earnings records, which show no earnings during the prescribed period

(Tr. 108), are not conclusive on this issue.  In light of the lack of support in the record for the

reasons given by the ALJ to discredit Davies' testimony on this point, and based on application

of this rule, the earnings records must be deemed conclusive.[4]

     The Commissioner suggests that alleged inconsistencies in the record could be cleared up

by reevaluating Davies' testimony, collecting her tax records, and otherwise developing the

record.  The ALJ already evaluated Davies' testimony, but, as discussed above, gave inadequate

reasons to discredit that testimony.  He also rebuffed Davies' offer to provide tax records

(Tr. 550) and cannot now reasonably complain that those were unavailable.  Finally, the

Commissioner fails to identify what "additional evidence" would be relevant to the issue of

---

[4] Davies also argues SSR 83-34, 1983 WL 31256, concerning comparability and worth of work, provides an independent basis for resolving this issue in her favor.  In light of the unavoidable conclusion that Davies' earnings records are conclusive, this court does not address that alternative argument.

9 - FINDINGS AND RECOMMENDATION

whether Davies worked and how much she earned between 1991 and 1998.  Thus, the argument

that the ALJ should be allowed to develop the record rings hollow.  The ALJ erred at step one,

and a searching review of the record does not support a finding that Davies performed

substantial gainful activity during the prescribed period.  The Commissioner should be bound by

this finding irrespective of whether this case is remanded for further proceedings or an award of

benefits.  However, for the reasons that follow, this court concludes that an award of benefits

should be ordered.

## II.  Remand for Benefits

The Commissioner argues that this case should be remanded for consideration of steps

two through five of the disability analysis.  However, the record is fully developed, and

application of the Medical-Vocational Guidelines to the evidence in this case would result in a

finding that Davies was disabled within the prescribed period.

When she applied for benefits, Davies alleged an onset date of March 1, 1998, some five

and a half months prior to a heart attack on September 19, 1998.  Tr. 213-15.  At a minimum, the

record reveals that Davies has a severe heart condition that manifested itself prior to the end of

the prescribed period.  As recognized by the ALJ at the hearing, that heart attack was the final

piece in a puzzle of ongoing impairments that rendered her unable to perform even sedentary

work:  "[T]he heart attack . . . sort of brought everything together so to speak . . . .  More likely

than not, . . . sedentary work certainly couldn't be sustained."  Tr. 585.  That conclusion is amply

supported by the record, which reveals ongoing difficulties both prior to and during the

prescribed period leading to the heart attack.  *See*, *e.g.*, Tr. 282-84, 340-43, 474-77.  Based on

that conclusion, the ALJ announced during the hearing that he was going to "use the date of the

heart attack as an onset date and reverse this on the grids." Tr. 586. Again, that is the appropriate result based on a review of the record as a whole.

The Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 ("Grids"), include tables corresponding to the defined exertional ranges of work: sedentary, light and medium. The Grids contain numbered rules which direct conclusions of "disabled" or "not disabled" where the findings regarding exertional capacity and the vocational factors coincide with those of a numbered rule. If a claimant has impairments that prevent the performance of the full range of work at a given exertional level, the ALJ must apply the Grids as a framework for equitable consideration of the claimant's occupational base in accordance with the policies described in SSR 83-12, 1983 WL 31253. The ALJ may rely on a VE to assess the effect of the claimant's limitations on the claimant's potential occupational base. *Id.*

As just noted, the record supports the ALJ's conclusion that Davies was unable to perform even sedentary work in the aftermath of her heart attack. When she had her heart attack, Davies was 54 years old, or "closely approaching advanced age," 20 CFR § 404.1563(d) (age 50-54), and had a high school education. The VE testified that she had no skills from previous employment that were directly transferrable to sedentary employment. Tr. 583-84. Under these circumstances, the sedentary Grids, Rules 201.12 and 201.14, directed a finding of disabled.

Although contending that "unresolved issues" warrant a remand for further proceedings, the Commissioner has not identified any such issue other than whether substantial gainful activity was performed during the prescribed period. As described above, the record does not support the ALJ's speculation on that issue, and applicable regulations deem Davies' earnings records conclusive on that point. The balance of the record supports Davies' position that the

Grids mandate a finding of disability and support the ALJ's suggestion that an appropriate onset date is the date of Davies heart attack, as Davies agreed at the hearing.  Tr. 586.  Thus, this case should be remanded for proceedings consistent with those conclusions.

## RECOMMENDATION

Based on the foregoing, the Commissioner's Motion to Remand (docket #16) for further administrative proceedings should be DENIED and this case should be REMANDED to the Commissioner pursuant to Sentence Four of 42 USC § 405(g) for an immediate award of benefits.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **March 30, 2007.**.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 13th day of March, 2007.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge